[No. 8333.  Department One.  February 26, 1910.]

LEANDER ANDERSON, *Respondent*, v. GLOBE NAVIGATION
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—WARNING—RE-
LIANCE UPON—QUESTION FOR JURY. The question of the contributory
negligence of a longshoreman, engaged in the loading of a lumber
schooner, in not taking a signal to hoist as a warning of the ap-
proach of a sling load, is for the jury, where it was customary for
the hatch tender and his duty to give a direct warning to the long-
shoremen and for them to work rapidly in reliance thereon.

SAME—ASSUMPTION OF RISKS—FAILING TO WARN. A longshore-
man engaged in loading a lumber schooner does not assume the risks
of negligence of the mate in failing to give warning of the approach
of a sling load, where the mate supervised the work and tended
hatch, and the workmen had to rely upon his giving the signals.

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR. Error cannot be
predicated upon an improper statement of a witness, struck out on
motion of the appellant, where no prejudice appears.

MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — EVIDENCE OF
CUSTOM—ADMISSIBILITY. Evidence that it was customary for all the
longshoremen engaged in loading a lumber schooner to rely on the
signal of the mate to warn them of the approach of the loaded sling
is admissible upon the issue of plaintiff's exercise of due care in
relying upon such warning being given.

PRINCIPAL AND AGENT—RELATION—EVIDENCE—SUFFICIENCY—MAS-
TER AND SERVANT—INDEPENDENT LESSEE. Evidence that a foreign
corporation, the owner of a vessel, directed its operation, took the
freights earned and paid the expenses of operation, makes a ques-
tion for the jury upon an issue as to whether a local corporation in
charge was an independent lessee, because so styled in a lease, or
merely the agent of the owner and the lease a mere makeshift to
avoid liability for personal injuries.

WITNESSES—IMPEACHMENT—REMOTENESS—PRINCIPAL AND AGENT—
EVIDENCE. Upon an issue as to whether the nominal lessee of a vessel
operated it as an independent lessee or as agent for the owner, a
witness who testified that the lessee owned no vessels and purported
to operate vessels of the owner only, may not be impeached by the
lessee's answer in an action in which it admitted ownership of a
certain other vessel, where the two events were not sufficiently con-
nected in point of time to even remotely contradict the witness.

[1]Reported in 107 Pac. 376.

TRIAL—ORDER OF PROOF. Error cannot be predicated upon the refusal to admit evidence in support of appellant's case in chief where it was offered out of order upon cross-examining the adverse party's witness on rebuttal.

MASTER AND SERVANT—NEGLIGENCE—WARNING—INSTRUCTIONS. In an action for personal injuries sustained by a longshoreman engaged in loading a lumber schooner, where the master, for the purpose of hastening the work, had assumed the burden of warning servants of the approach of a loaded sling, and the men were required to rely on the warning, it is proper to refuse any requested instruction which told the jury that the workmen must rely on their own resources to protect themselves, and not on the warning.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 20, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a longshoreman while loading a ship. Affirmed.

*Roberts, Battle, Hulbert & Tennant,* for appellant.
*Alexander & Bundy,* for respondent.

FULLERTON, J.—The respondent is a longshoreman, and on February 15, 1907, was employed as such in loading the lumber schooner Alex T. Brown. The lumber was brought alongside the schooner on scows, from whence it was carried to the schooner deck in sling loads, by means of a hoisting rigging operated by a steam winch. After being carried to the deck, the lumber was deposited on a block, from whence it was distributed to the various parts of the vessel by the longshoremen. The respondent was working on the port side of the vessel, taking lumber from a block and storing it forward. The loading was done under the direction of the first mate of the vessel, who also acted as hatch tender. It was his duty to signal the winch driver when to hoist and when to lower the sling loads, and to warn the longshoremen of the approach of a sling load that they might get out of the way. The work was done rapidly and the longshoremen

paid no attention to the approach of the sling loads until they heard the warning given by the mate.

The respondent while engaged in his work was injured. In the regular performance of his duty, he picked from the block a piece of timber of considerable size and length, and was proceeding to carry it away, when a sling load of lumber was dropped on the end next the block, knocking him down. No warning was given of the approach of this sling load. The mate, after giving the signal to hoist the load, seems to have turned away from his usual post, and the respondent, relying on the belief that a signal would be given, failed to look out for himself, and was injured in consequence. This action was brought to recover for the injuries so suffered. At the trial in the court below the jury returned a verdict in respondent's favor for the sum of $600, and judgment was entered thereon, from which this appeal was taken.

The appellant insists that the respondent was guilty of contributory negligence, and that he assumed the risk of injury from the operation of the sling. The first branch of the contention is based on the claim that the respondent, being an experienced sailor and longshoreman, should have taken the mate's signal to hoist as a warning of the approach of the sling load and kept out of the way. But we are clear that, under the facts of the case, this was a question for the jury. It was customary for the mate to give a direct warning to the longshoremen themselves, and the respondent had the right to rely upon this custom, and it was for the jury to say whether there was anything unusual connected with the hoisting of this particular load that would render the customary warning unnecessary. Nor did the respondent assume the risk of injury from a failure to warn on the part of the mate. The business of loading the schooner with lumber could not be safely carried on without supervision on the part of someone. When, therefore, the master undertook to supervise the work, it was bound to exercise ordinary care in the performance of the duty, and its failure so to do

renders it liable to its servants for injuries caused thereby. The servants did not assume the risk of injury caused by its neglect.

It is next complained that the court erred in allowing a witness to testify to an accusation he had made against the mate at the time of the injury. But as we read the record, there was nothing left of the statement after the court, on motion of counsel, had eliminated the supposedly objectionable parts. The record was left in a condition somewhat confusing as to the matters the jury could properly consider as evidence, but we find in it no prejudicial error.

A number of witnesses were allowed to testify, over the objection of the appellant, that it was the custom of all the longshoremen working on this vessel at the time the appellant was injured to depend on the signal of the mate to warn them of the approach of the loaded sling, and not to look out for it themselves. It is urged that this is error for the reason that the longshoremen were bound under the law to exercise ordinary care in protecting themselves; and that if, by reasonable care, the respondent could have protected himself from injury by the loaded sling, it was his duty to so exercise it, regardless of the custom. This contention is no doubt sound, but this evidence, as we view the record, was introduced for the purpose of showing what was reasonable care under the circumstances. If all of the longshoremen relied upon the mate to warn them of the approach of the sling, and this was the custom under like conditions, it is some evidence that the respondent was exercising ordinary and reasonable care for his own safety in following the custom, and it was not error to admit it.

The appellant is incorporated under the laws of New Jersey, and is admittedly the owner of the schooner on which the respondent was working. It set out in its answer, however, and at the trial attempted to show, that it had leased the schooner to a corporation organized under the laws of this state known as the Globe Navigation Co., Ltd., and that

this latter corporation was operating the vessel at the time of the respondent's injury under its lease, and was alone responsible for any injury occurring to the persons employed as laborers thereon. The respondent, in rebuttal, offered evidence tending to show that this lease was a mere makeshift, intended for the purpose of relieving the appellant from liability for accidents of this character, whereas in truth and in fact it was operating the vessel for its own benefit and profit through the second corporation as its agent. The court submitted this question to the jury, and the appellant now contends that this was error; that there was, in fact, no competent evidence tending to dispute the fact that the lessee corporation was not operating the vessel on its own behalf. But without entering upon a review of the evidence, we hold that the court properly submitted the question to the jury. The local corporation cannot be held to be an independent lessee merely because the lease so styles it. Whether it was so, depends upon the character in which it in fact was acting. If it is a fact, as the evidence tended to show, that the appellant directed the operation of the vessel, took the freights earned by it, and paid the expenses of operation, it was competent for the jury to find that the appellant was the real principal and the local corporation a mere agent.

In this connection the appellant complains of the exclusion of certain evidence. One H. R. Clise, called as a witness on behalf of the respondent, testified concerning the relations between the appellant and the local corporation. On cross-examination he testified, in answer to questions propounded by appellant's counsel, that the local corporation owned no vessels itself, but that all of those it purported to operate were the property of the appellant. He was then asked if the local corporation did not, in an answer filed to an action brought against it, admit its ownership of a vessel known as the William T. Nottingham. To this an objection was interposed and sustained, whereupon the appellant offered the answer itself, which was excluded also. These rulings are

assigned as error, but we think the rulings correct. If the purpose was to impeach or contradict the witness, the two events were not sufficiently connected in point of time to even remotely do that. If it was offered as independent evidence in support of the appellant's case in chief, then it was rightly rejected as being offered out of its proper time. The order in which evidence is introduced is, of course, not very material, and the courts generally hold that evidence duly admitted, although irregularly, is entitled to all the consideration it otherwise deserves. But error cannot be predicated· on the fact that the trial court enforces technical rules governing the admission of evidence.

Finally, objection is made to certain instructions given by the court, and to certain others requested by the appellant and by the court refused. The exception to those given is based upon a different view of the evidence from that taken by the trial court and by us in this opinion, and is sufficiently answered by what has been said concerning the sufficiency of the evidence. Those requested and refused, with the exception hereinafter noticed, require no special consideration. In so far as they were pertinent, they were included in the general charge given by the court.

Requested instructions numbered five and six were as follows:

"(5) You are instructed that the duties of the plaintiff and the defendant are reciprocal and while the defendant was required under the law to exercise reasonable care, the plaintiff was also required to exercise reasonable care in working in handling the lumber and performing the duties required of him under his employment. If the plaintiff could have seen that the slingload of lumber was about to strike the piece of lumber he held in his hands, by the exercise of reasonable care on his part, then the law imposes on him the duty of seeing. It is the duty of a man working in a dangerous place or a place where he is liable to receive injury, to make a reasonable inspection of the conditions about him and the method of doing the work. He is also required to keep a lookout for approaching dangers that he is acquainted with,

and if a man is injured while working about any kind of work by reason of his own failure to keep a reasonable lookout and to exercise his natural faculties in a reasonable way to avoid an accident, he cannot recover. And if you find in this case that the plaintiff by the exercise of reasonable care on his part could have seen and understood the danger and could have avoided the same by keeping a reasonably careful lookout and observation on his part, then he cannot recover and your verdict must be for the defendant.

"(6)   You are instructed that it was the duty of the plaintiff to perform his work in a careful manner and to do it in a way and at a time that was safe, if he could have done so, and if he knew that a slingload of lumber, or if he should have known that a slingload of lumber was about to be raised or swung in from the vessel and that it was liable to strike the piece of lumber that he had in his hands, then it was his duty to exercise reasonable care to avoid injury by reason of this slingload of lumber being swung in on the deck of the vessel, and if you believe from the evidence that the plaintiff knew or could have known by the exercise of reasonable care on his part that the slingload of lumber was being swung in upon the vessel and that the same was liable to strike the piece of lumber he had in his hands, and he failed to exercise reasonable care in this regard, then your verdict should be for the defendant."

These requests, while they might be appropriate under other conditions, seem to us wholly inapplicable to the facts as shown by this record. Here, the master, for the purpose of better handling its work, had assumed the burden of warning its servants of the approach of this sling. The servants were not only invited but required to rely on this warning to protect them from danger. They were expected to go to the blocks and take away the lumber at all times other than such times as they should be told not to go. The arrangement was one intended to hasten the work. It was for the master's benefit. Any instruction, therefore, which told the jury that the workmen must rely upon their own resources to protect themselves, and not on the warning given by the

master, would be contrary to the law arising from the facts proven, and hence in itself error.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, GOSE, and MORRIS, JJ., concur.