[No. 8794. Department One. June 30, 1910.]

JOHN NORMAN, *Respondent*, v. SHIPOWNERS STEVEDORE COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—WARNING—EVIDENCE—SUFFICIENCY. There was sufficient evidence of negligence to warrant a recovery by a stevedore for injuries sustained in loading a vessel with heavy timbers, where there was evidence that it was the duty of the hatch tender to notify him of the approach of a timber, that the men worked in reliance upon the warning, and none was given to the plaintiff, the hatch tender having deserted his post, and the injury resulted by reason of failure to give the warning.

WITNESSES—IMPEACHMENT—OPINIONS—ADMISSIBILITY. It is not competent to rebut the statements of a witness giving his opinion as to the cause of an accident, admitted without objection, by other statements made by him, giving a different opinion; since the conclusions of the witnesses were incompetent, and not within the rule of impeaching a witness by contradictory statements made out of court.

Appeal from a judgment of the superior court for Snohomish county, Carey, J., entered November 27, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a stevedore engaged in loading a steamer with lumber. Affirmed.

*A. R. Coleman* and *John P. Hartman*, for appellant.

*Hathaway & Alston*, for respondent.

MORRIS, J.—Action to recover damages for personal injuries, verdict and judgment for respondent, and defendant appeals.

The errors assigned suggest the insufficiency of the evi-

[1]Reported in 109 Pac. 1012.

dence by way of motion for nonsuit, challenge and motion for judgment, the court's ruling on a question of evidence, and that the verdict is excessive. The respondent was a stevedore, engaged in loading a steamer with lumber. At the time of the accident, the hold of the steamer had been filled, and large timbers 12x12x50 were being loaded on deck. The timber was taken from the wharf by falls and winches, and was loaded alternately on each side of the vessel. In order to have these big sticks ride easily, the men had built what they call a "crack" or "gap" in the deckload, which was about four feet deep, into which the sticks were lowered by the winch, and then properly stored away by the men working in the "gap." In order to further assist in properly loading the sticks, they placed what they called "dunnage," being small cross-pieces of wood one or two inches thick upon which the big timbers were lowered. Respondent was at work in one of these gaps, with his back to the winch, stooping over and placing these dunnage strips, preparatory to receiving the next timber on his side, when he was hit by one of the timbers then being lowered into the gap, and received the injuries complained of.

Two grounds of negligence were alleged, the negligence of Carlson, the winch tender, and the failure of Schwartz, the hatch tender, to give warning by reason of his temporary absence from the scene of his duty, without the knowledge of respondent. The first ground was abandoned at the trial, and the entire evidence of negligence was confined to the second ground. Without setting forth the evidence in detail, it is sufficient to say there was ample testimony to show that it was the duty of the hatch tender to warn the men to look out when the timbers were lowered into place in the gaps, and that the men working in the gaps relied upon this warning and paid no attention to the timbers until notified by the hatch tender that one was about to be lowered into the gap. When the timber that caused respondent's injury came up, the hatch tender for some reason had gone to one of the other

winches, and respondent received no warning of its approach until he was struck and injured. The respondent testified that the hatch tender had been there when the last timber came into his gap, and that he supposed he was still there and would warn him of its approach. Other testimony shows the hatch tender had been gone from five to ten minutes. It appearing, then, that it was the duty of the hatch tender to warn, that the men relied upon this warning, that no warning was given, that respondent did not know the hatch tender had gone to the other winch, but depended upon him to give notice when the next timber would be lowered into the gap, there can be no question but that there was sufficient evidence to take the case to the jury on this charge of negligence, and to sustain the verdict and judgment. Appellant's theory of the cause of the accident is immaterial, since the jury by their verdict disregarded it. There was no error in the denial of either nonsuit or judgment. *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765; *Anderson v. Globe Nav. Co.*, 57 Wash. 502, 107 Pac. 376.

The verdict is large but, in view of respondent's evidence as to the extent of the injury and his ability to labor since, we cannot say it is excessive. There being no medical testimony in the record as to the extent of the injury or its effect upon respondent's earning power, we must accept the only evidence we have, under which the verdict is not excessive.

Appellant called Carlson, the winch tender, as one of its witnesses, and examined him as to the manner of the accident. On cross-examination he was asked: "If the hatch tender had been at his place of duty as he ought to have been, could this accident have happened?" Manifestly such a question called for the conclusion of the witness and was improper, but no objection being made by appellant the witness answered: "That I couldn't say, but he would probably stop me from coming up until he seen everything clear." The witness was then turned over to appellant on redirect, and was examined for some time as to certain statements theretofore

made to counsel for appellant and Anderson, a witness for appellant. Among others, this question was asked him: "Do you remember stating to us, positively and repeatedly during that conversation, that the fact that Mr. Schwartz was at No. 4 winch before and at the time of the accident had absolutely nothing to do with the happening of the accident," to which he made answer: "No, sir. I never said such a question in my life. Of course, I don't understand it." Then the following question: "I am asking you if you did not state there that it would not have made any difference." Answer: "I don't think I did, sir, because I wouldn't state such a foolish statement." Appellant then called Anderson and asked this question: "Do you remember during the conversation that I have referred to, Mr. Carlson stating to us, in substance and effect, that the absence of Schwartz from the vicinity of No. 3 hatch, and the fact that he was running No. 4 winch, had nothing whatever to do with the happening of the accident?" Respondent objected and the objection was sustained, and such ruling is now asserted as error. This last question, like the one on cross-examination, called for the conclusion of the witness, and was properly ruled out. It did not come under the rule of showing contradictory statements made out of court, as neither question called for any specific detail or statement of a fact provable in the case. It was nothing more than the then expressed opinion of Carlson as to what effect, if any, the absence of the hatch tender had upon the accident. That, under the issues and evidence, was a question for the jury and not for the witnesses, whatever their opinion may have been, or however they may have expressed it, and it mattered not whether the witness entertained the same opinion at the trial as at some previous time, since neither was properly admissible in evidence, and hence no error can be predicated upon such ruling.

The judgment is affirmed.

Rudkin, C. J., Gose, Fullerton, and Chadwick, JJ., concur.